UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| B.P. and her minor child L.E.S.,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>DREW H. BOSTOCK, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. C23-0890-KKE<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

This Court's jurisdiction to consider claims raised by noncitizens in removal proceedings is limited by the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9). The Court is nonetheless empowered to entertain claims collateral to removal proceedings that do not arise from the removal proceedings themselves. Where, as here, a noncitizen alleges that she and her minor child were illegally taken from the United States, in violation of applicable law and because of affirmative government misconduct, this Court has authority to consider their claims. Because the Court has subject matter jurisdiction over this dispute and Plaintiffs have stated plausible claims upon which some relief may be granted, the Court denies Defendants' motion to dismiss.

//

//

//

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 1

## I.    BACKGROUND[1]

Plaintiff B.P. and her minor[2] son, Plaintiff L.E.S., are citizens of Guatemala.  Dkt. No. 4 ¶¶ 6–7.  Plaintiffs were threatened, assaulted, and robbed by gang members in Guatemala and interrogated regarding B.P.'s long-term partner and the father of L.E.S., who resisted gang recruitment.  *Id*. ¶ 13.  Plaintiffs fled Guatemala and entered the United States without authorization in July 2021.  *Id*.

Plaintiffs were eventually apprehended and placed in removal proceedings.  Dkt. No. 4 ¶ 14.  They appeared for several preliminary hearings and ultimately applied for asylum.  *Id*.  The final removal hearing was scheduled for August 29, 2022, and B.P. arrived late because of an unexpected reduction in ferry service caused by the COVID-19 pandemic and staffing shortages.  *Id*. ¶ 15.  When B.P. did not appear on time, the immigration judge ordered that Plaintiffs be removed *in absentia* without considering their asylum application.  *Id*. ¶ 16.  A court clerk handed B.P. a copy of the *in absentia* order when she arrived at the courthouse, and wrote her a note indicating that she could move to reopen her removal proceedings within 30 days.  *Id*. ¶ 17.

B.P. then contacted Northwest Immigrant Rights Project ("NWIRP") for assistance.  Dkt. No. 4 ¶ 18.  A NWIRP attorney agreed to file a motion to reopen and rescind the *in absentia* removal order.  *Id*. ¶ 19.  Plaintiffs' counsel filed the motion on September 27, 2022 (29 days after the *in absentia* order was entered), so that B.P. could bring a conformed copy of the motion to her check-in with Immigration and Customs Enforcement ("ICE") scheduled for that day "to demonstrate that she was diligently pursuing her case."  *Id*. ¶¶ 20–21.  Plaintiffs' counsel hand-filed the motion at the immigration court that day, received a conformed copy, and electronically

---

[1] This section assumes, in resolving the motion to dismiss, that the factual allegations in the complaint (Dkt. No. 4) are true.

[2] L.E.S. was five years old when this case was filed in June 2023.  *See* Dkt. No. 4 ¶ 7.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 2

served opposing counsel. *Id.* ¶ 21. ICE sent an electronic confirmation and acceptance of service that day. *Id.* Inadvertently, Plaintiffs' counsel had listed an outdated mailing address for ICE on the certificate of service and had mailed a copy of the motion "to the old address where ICE had been located for over 20 years, before moving earlier that year during the Covid-19 pandemic." *Id.*

B.P. was scheduled to check in with ICE that day, September 27, under the terms of her supervised release, and had been assured during her most recent supervision call that no adverse action would be taken against her at the check in. Dkt. No. 4 ¶¶ 20, 22. B.P.'s counsel did not expect any adverse action to be taken either, given that the *in absentia* order had been filed recently and the motion to reopen had been filed, and ICE had not yet served B.P. with a "bag and baggage" letter[3] or other notice directing her to prepare for removal. *Id.* ¶ 22. Plaintiffs' counsel instructed B.P. to call, or have ICE call, if there was any question about whether the motion to reopen had been filed. *Id.*

The next day, on September 28, B.P.'s partner contacted Plaintiffs' counsel, frantic that Plaintiffs had not returned from the check-in appointment with ICE. Dkt. No. 4 ¶ 23. Plaintiffs' counsel emailed ICE early on the morning of September 29 to request an update on Plaintiffs' whereabouts. A representative for ICE responded later that day, stating that Plaintiffs had been taken into custody at the check-in appointment on September 27 and sent to Guatemala the next day, September 28. *Id.* Attached to the email was an immigration court notice, dated September 27, rejecting the motion to reopen and rescind for listing the incorrect mailing address for ICE in the certificate of service. *Id.* The notice had been electronically served on ICE, but not on

---

[3] *See, e.g., Carrillo v. Ashcroft*, 111 F. App'x 532, 533 (9th Cir. 2004) (discussing the form "bag and baggage" letters that instruct a noncitizen to appear for removal).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 3

Plaintiffs' counsel. *Id*. The notice was mailed to Plaintiffs' counsel and not received until after Plaintiffs had been removed. *Id*. ¶ 24.

That same day (September 29) that Plaintiffs' counsel learned that the motion to rescind and reopen had been rejected, Plaintiffs' counsel refiled the motion to rescind and reopen, and it was granted on October 11, 2022, with a hearing set for October 18. Dkt. No. 4 ¶¶ 25–26. Plaintiffs' counsel subsequently moved to continue the hearing because B.P. was unavailable to attend in person, and the immigration judge granted that motion. Dkt. No. 4 ¶ 26. The immigration judge subsequently granted a motion to administratively close the case to permit the parties "to resolve the issue of [B.P.'s] return to the U.S. to pursue her asylum application." *Id*.

Plaintiffs' counsel contacted ICE to request Plaintiffs' return to the United States to attend removal proceedings in person. Dkt. No. 4 ¶ 27. "After repeated inquiries, local level ICE [officials] informed counsel that they would not facilitate [Plaintiffs'] return on the grounds that: 'The removal order was final at the time the order was executed and there [sic] no legal impediments to removal.'" *Id*. ¶ 28. According to those officials, the removal order "was a final decision with no appeal available." *Id*. The decision of local ICE officials was affirmed by national ICE officials. *Id*. ¶ 29.

B.P. spoke with her counsel on the telephone after her removal, and she reported that when she appeared for her ICE appointment on September 27, ICE denied her request to call her lawyer. Dkt. No. 4 ¶ 30. When she explained that she had an attorney and a motion to reopen had been filed, ICE officers told her that there was nothing that could be done to stop her removal. *Id*. ICE officers did not call Plaintiffs' counsel. *Id*.

Plaintiffs are now in hiding in Guatemala. Dkt. No. 4 ¶ 31. B.P. believes it is not safe for her son to go to school, nor go out in public for any significant period of time. *Id*. "Because of

her fear of persecution in Guatemala, she wishes to pursue her asylum case in the [United States]." *Id.*

Plaintiffs filed this action, alleging that Defendants[4] violated the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment right to due process, and further alleging affirmative government misconduct and unlawful removal. Dkt. No. 4. Plaintiffs seek declaratory and injunctive relief, and a writ of mandamus ordering Defendants to return Plaintiffs to the United States at government expense so that they can attend their removal proceedings in person. *Id*. at 19–20.

Defendants filed a motion to dismiss. Dkt. No. 15. After considering briefing[5] submitted by the parties, along with briefing submitted by amicus curiae National Immigration Litigation Alliance, and the oral argument of counsel, the Court denies Defendants' motion.

## II.   ANALYSIS

Defendants' motion to dismiss provides two alternate arguments for dismissal: (1) this case should be dismissed for lack of subject matter jurisdiction under 8 U.S.C. §§ 1252(a)(5) and (b)(9); or (2) this case should be dismissed because Plaintiffs have failed to state a valid claim upon which relief can be granted. Dkt. No. 15 at 1–2. For the reasons below, the Court rejects both bases for dismissal.

**A.    The Court Has Subject Matter Jurisdiction.**

According to Defendants (Dkt. No. 15 at 4–9), this Court lacks jurisdiction to hear Plaintiffs' claims both because there is no final removal order, and because even if there were,

---

[4] Defendants are Alejandro Mayorkas, secretary of the U.S. Department of Homeland Security; Drew H. Bostok, Seattle field office director for ICE; Tae D. Johnson, ICE acting director; Troy Miller, acting commissioner of Customs and Border Protection; and Merrick B. Garland, United States attorney general. *See* Dkt. No. 4 ¶¶ 8–12. Each Defendant has been sued in his official capacity. *See id.*

[5] The Court refers to the parties' briefing using the CM/ECF page numbers.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 5

judicial review of such an order is only available in the U.S. Court of Appeals for the Ninth Circuit after exhaustion of administrative remedies based on the jurisdiction-stripping provisions of the INA.  *See* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9).  Plaintiffs agree that there is no final removal order here, and contend that their claims are collateral to their administratively stayed removal proceedings and are therefore not subject to the INA's jurisdictional bar.  Dkt. No. 18 at 12–14.

In order to resolve Defendants' motion to dismiss for lack of jurisdiction, the Court will first address the jurisdiction-stripping provisions of the INA, consider the circumstances under which they apply, and then determine whether they apply to bar Plaintiffs' claims here.

1. The Jurisdiction-Stripping Provisions of the INA

The INA contains two provisions that limit judicial review of final orders of removal.  First, the INA channels all lawsuits arising from removal proceedings to federal appellate courts:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal[.]

8 U.S.C. § 1252(a)(5).  The INA also requires that all questions of law and fact arising from removal proceedings must be raised in one petition for review:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

The Ninth Circuit has explained that these two provisions ensure that immigrants receive their "day in court" by "channel[ing] judicial review over final orders of removal to the courts of appeals" with considerable breadth:

> Section 1252(b)(9) is, as the First Circuit noted, "breathtaking in scope and "vise-like" in grip and therefore swallows up virtually all claims that are tied to removal proceedings. *See Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007). Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process. *See Viloria v. Lynch*, 808 F.3d 764, 767 (9th Cir. 2015) ("It is well established that this court's jurisdiction over removal proceedings is limited to review of final orders of removal."); *cf. Bibiano v. Lynch*, 834 F.3d 966, 972-74, 2016 WL 4409351, at *5 (9th Cir. 2016) (holding that 8 U.S.C. § 1252(b)(2)'s venue provision is not jurisdictional, but contrasting the venue statue with other statutes in the INA that use the terms "judicial review" or "jurisdiction").

*J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). The purpose of Section 1252(b)(9) is to "limit all [noncitizens] to one bite of the apple with regard to challenging an order of removal." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012).

2. <u>The Scope of the Jurisdictional Bar</u>

To determine whether the INA's jurisdictional bar applies, the Court begins where the parties agreed at oral argument that the Court should begin: the Supreme Court's discussion of Section 1252(b)(9) in *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018).

In *Jennings*, a noncitizen detained pending removal proceedings filed a habeas petition alleging that he was "entitled to a bond hearing to determine whether his continued detention was justified." 583 U.S. at 290. The *Jennings* Court found that, although the plaintiff had not yet obtained a final order of removal, his failure to exhaust his administrative remedies did not deprive the Court of jurisdiction because the plaintiff's claim did not "arise from" his removal proceedings. *Id*. at 292–93.

*Jennings* identified three types of claims that "arise from" actions taken to remove noncitizens, such that the jurisdiction-stripping provisions apply: when a plaintiff challenges (1) a

final order of removal, (2) the government's decision to detain or to seek to remove them in the first place, or (3) any part of the process by which their removability will be decided. *See* 583 U.S. at 294. Although *Jennings* acknowledged that a detained noncitizen's claim for assault in a federal detention center could be said to "arise from" removal proceedings, in that the noncitizen was detained pending removal proceedings, it would be "absurd" to "cram[] judicial review of those questions into the review of final removal orders[.]" *Id*. at 293. *Jennings* cautions against an "expansive interpretation" of the jurisdictional bar that "would lead to staggering results." *Id*.

The *Jennings* Court found that Section 1252(b)(9) did not bar the Court's review because the noncitizen's challenge to prolonged detention during removal proceedings did not fit into any of the three categories of claims that "arise from" removal proceedings. 583 U.S. at 294. The *Jennings* Court also noted that if a noncitizen could not challenge prolonged detention before obtaining a final order of removal, a claim for prolonged detention would be "effectively unreviewable" because "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Id.* at 293.

With these principles in mind, the Court now turns to consider whether it is deprived of jurisdiction to resolve the claims presented in Plaintiffs' suit.

3. <u>Plaintiffs' Claims Do Not "Arise From" Removal Proceedings.</u>

The Court finds that, under *Jennings*, there is no jurisdictional bar to Plaintiffs' suit because their claims do not fall into any of the three categories of claims that "arise from" removal proceedings, as identified in that case.

First, Plaintiffs' suit does not seek review of a removal order because there is no such order in effect at this time: the immigration judge rescinded the removal order and reopened the removal

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 8

proceedings, and those proceedings are currently administratively stayed pending the resolution of this action. *See* 8 U.S.C § 1229a(b)(5)(C) ("The filing of the motion to reopen described in [§ 1229a(b)(5)(C)](i) or (ii) shall stay the removal of the [applicant] pending disposition of the motion by the immigration judge."); 8 C.F.R. § 1003.23(b)(4)(ii) ("The filing of a motion under this paragraph shall stay the removal of the [applicant] pending disposition of the motion by the Immigration Judge."); *see also Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1366–68 (11th Cir. 2006) (holding that a petitioner who challenges the existence of a removal order cannot be said to challenge a removal order for purposes of the jurisdictional bar).

Second and third, Plaintiffs do not challenge either their removability or Defendants' decision to seek removal in the first place, nor do they seek to challenge any part of the substantive process by which an immigration judge would adjudicate future removal proceedings. Instead, what Plaintiffs seek in this lawsuit is a remedy for the government misconduct that led to their removal and which is preventing the full adjudication of their asylum application.

Defendants insist that even allegations of wrongful removal, such as those presented here, must be channeled through the administrative process, although they cite no case supporting that conclusion that involves analogous allegations of affirmative government misconduct. For example, Defendants' motion cites *Conteh v. Wolf*, No. 20-cv-10736-ADB, 2020 WL 6363910 (D. Mass. Oct. 29, 2020), a case involving a petitioner removed on grounds he alleged to be legally insufficient,[6] and who subsequently succeeded on a motion to rescind and reopen proceedings. The petitioner argued that the Government should be made to facilitate his return to the United States to participate in the reopened removal proceedings because videoconference participation

---

[6] Although the petitioner in *Conteh* alleged that his removal was improper because he was removed because of a marijuana-related conviction that should not have disqualified him from becoming a lawful permanent resident of the United States, the Court agreed with the government that this argument was "logically flawed" because his conviction post-dated the entry of his removal order. 2020 WL 6363910, at *2–3, 7.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 9

was inadequate. *Id*. at *5. The court explained that the petitioner's suit was jurisdictionally barred because petitioner "is asking the Court to consider legal questions that are clearly linked to his pending reopened removal proceeding, the most important of which is: if a person who has been (un)lawfully removed prevails on a motion to reopen, is he or she entitled to be returned to the United States to participate in the reopened removal proceedings?" *Id*. at *7.

The *Conteh* court found that this result did not deprive the petitioner of judicial review of his day in court because even if, after remote removal proceedings, petitioner was ordered removed, he could "challenge the validity of the final order of removal and raise his arguments in a petition for review in the appropriate court of appeals." 2020 WL 6363910, at *5. Thus, the court found that petitioner's claim "is not the now or never variety that appears to have fueled Justice Alito's apprehension" in *Jennings*, fearing that an overly broad interpretation of Section 1252(b)(9) could result in a noncitizen never being able to bring his or her claim. *Id*.

Although the *Conteh* court found that the petitioner's claims were not "truly collateral to the removal decision" (2020 WL 6363910, at *5), Plaintiffs here raise claims based on affirmative government misconduct separate from issues related to how any future removal proceedings will be conducted. The Court is thus persuaded that Plaintiffs' claims do not "arise from" removal proceedings.[7] As a result, these collateral claims are not barred by the jurisdiction-stripping provisions of the INA. *See Dep't of Homeland Sec. v. Regents of Univ. of Calif.*, 591 U.S. 1, 19 (2020) (finding no jurisdictional bar if "the parties are not challenging any removal proceedings"). Claims collateral to the removal process need not be channeled through the administrative process. *See, e.g.*, *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (holding that a jurisdiction-

---

[7] Although Defendants seek to characterize *Anaya Murcia v. Godfrey*, No. 19-cv-587-JLR, 2019 WL 5597883 (W.D. Wash. Oct. 10, 2019), *report and recommendation adopted*, 2019 WL 5589612 (W.D. Wash. Oct. 30, 2019), as presenting the "nearly identical" considerations presented here, they also acknowledge that the plaintiff there did not challenge the lawfulness of his removal. Dkt. No. 15 at 6. The existence of that challenge here presents a different question as to whether Plaintiffs' claims are collateral, and therefore the Court finds *Anaya Murcia* has limited utility.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 10

stripping provision of the INA (8 U.S.C. § 1252(g)) should be read narrowly and does not apply to petitioner's tort claim for damages suffered as a result of a wrongful removal); *J.E.F.M.*, 837 F.3d at 1032 (INA does not channel "claims that are collateral to, or independent of, the removal process" through the administrative process).

Furthermore, to require Plaintiffs to continue with their removal proceedings remotely would require them to forfeit the opportunity to be granted asylum. At oral argument, Defendants agreed that asylum cannot be granted to individuals residing outside the United States in their country of citizenship. Although Defendants theorized at oral argument that an immigration judge could find that Plaintiffs were entitled to asylum and condition an award of asylum on Plaintiffs' returning to the United States on their own, Defendants provided no authority that this scenario is permissible, let alone possible. Moreover, even if possible, proceeding in this manner would again permit the government misconduct alleged here to evade review, and as a direct result of the misconduct itself. Because the allegations of affirmative government misconduct as well as Plaintiffs' pending asylum application distinguish this case from *Conteh*, the Court thus finds *Conteh*'s reasoning less persuasive here.

The Court can also distinguish its conclusion here from a Seventh Circuit opinion Defendants cited at oral argument, as support for their argument that the district court lacks jurisdiction to hear a challenge to the execution of a removal order, even where the challenge is based on an allegation of a wrongful removal. *See Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 737–38 (7th Cir. 2012). In *Rivas-Melendrez*, the petitioner attempted to challenge in district court the execution of a removal order against him, contending that it was "invalid because it occurred too soon, while his time to appeal was still running." *Id*. at 737. The petitioner requested that the district court order that he be returned to the United States so that he could file an appeal of the removal order. *Id*. at 736. The Seventh Circuit affirmed the district court's finding that this action

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 11

was jurisdictionally barred as a challenge to the execution of a removal order under 8 U.S.C. § 1252(g), because "[r]eview by district courts of [administrative decisions to commence removal proceedings, adjudicate cases, or execute removal orders] is not otherwise provided for in [Section 1252] and is therefore blocked." *Id*. at 738.

The Court's considerations here are distinguishable from *Rivas-Melendrez* on several grounds. First, although petitioner there sought to be returned to the United States so that he could appeal his removal order,[8] Plaintiffs here have already obtained the relief Rivas-Melendrez sought: Plaintiffs have obtained the rescission of the removal order and seek now to be returned to the United States so that their asylum application can be fully adjudicated. Thus, although the Seventh Circuit agreed with the district court that Rivas-Melendrez's challenge was jurisdictionally barred, this case is distinguishable based on its procedural posture, given that there is no final order of removal currently in place here.

Second, the *Rivas-Melendrez* court noted that in that case, applying the jurisdictional bar left petitioner with "effectively no remedy for what may have been procedural violations committed by ICE agents and perhaps other immigration officials in connection with the order of removal." 689 F.3d at 739. Although that court felt nonetheless constrained to affirm the district court's dismissal for lack of jurisdiction given the relief sought there, the Court need not compartmentalize its sympathies here. Rather, Plaintiffs' claims here center on not only alleged procedural violations in executing the *in absentia* removal order, but also allegations of affirmative government misconduct collateral to the issues to be presented in any future removal proceedings.

---

[8] The *Rivas-Melendrez* court also noted that the Board of Immigration Appeals procedures allowed petitioner to request discretionary reconsideration of his removal order. 689 F.3d at 739–40. The Court knows of no such alternative forms of relief available to Plaintiffs that would allow them to be granted asylum while they are outside the United States.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 12

Specifically, Plaintiffs allege that they had not been told to prepare for removal, they had received assurances that no adverse actions would be taken against them at their ICE check-in appointment, ICE denied Plaintiffs' request to speak with counsel while they were detained, and ICE did not notify Plaintiffs' counsel that the motion to reopen had been rejected until after Plaintiffs were sent to Guatemala. *See* Dkt. No. 4 ¶¶ 20–24, 30. Adjudication of the claims based on these allegations does not require this Court to comment on the ultimate question of Plaintiffs' removability. To the contrary, if Plaintiffs are eventually denied asylum and an order of removal is entered against them, any challenge to that removal order would have to be channeled through the administrative process and eventually to the Ninth Circuit.

For all of these reasons, as to the claims presented in this lawsuit, seeking a remedy for the alleged government misconduct that resulted in Plaintiffs' forced return to Guatemala, the Court finds that Sections 1252(a)(5) and 1252(b)(9) do not strip this Court of jurisdiction.

### B.   Plaintiffs' Complaint States Claims Upon Which Relief Can Be Granted.

Plaintiffs confirmed at oral argument that despite raising several claims, they seek only one remedy: facilitated return to the United States. Defendants argue that, even if the Court finds that it has jurisdiction to hear Plaintiffs' claims, the complaint should be dismissed because it fails to state any valid claim upon which that relief can be granted. For the reasons below, the Court finds that Plaintiffs' complaint states valid claims upon which some relief may be granted, and the Government has therefore failed to show that the complaint should be dismissed. Whether Plaintiffs' claims entitle them to a return to the United States facilitated by the U.S. government need not be resolved now.

1. <u>Legal Standards</u>

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, the plaintiff has stated

"a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).

Failure to request the proper remedy is not equivalent to a failure to state a claim: "[A] plausibly alleged claim – under which the pleading party would be entitled to some relief – should not be dismissed simply because the party has requested a specific form of relief that is legally unavailable." *Hyp3r Inc. v. Mogimo Inc.*, No. 17-cv-02977-JSW, 2017 WL 11515712, at *3 (N.D. Cal. Nov. 8, 2017).  "[I]t need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985).

2. Wrongful Removal

Plaintiffs' complaint alleges a claim for wrongful removal.  Dkt. No. 4 ¶¶ 52–56. Individuals who are wrongfully removed are entitled to be readmitted to the United States to "pursue any administrative and judicial remedies to which [they are] lawfully entitled." *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977); s*ee also Singh v. Waters*, 87 F.3d 346, 350 (9th Cir. 1996) (finding that because a noncitizen's deportation was unlawful, and "physically removing him made the full reopening of his case impossible[,]" the government needed to permit him to return to appear at his reopened proceedings in person).

Plaintiffs contend that they were wrongfully removed because they were removed before the expiration of the 180-day period to file a motion to rescind and reopen removal proceedings, after being assured by the government that no such action would be taken. Dkt. No. 4 ¶¶ 52–53. Plaintiffs allege that B.P. had also been told that she had 30 days in which to move to rescind and reopen, and that she filed such a motion even within this shortened timeframe. *See id*. ¶ 53; Dkt.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 14

No. 18 at 3 (citing *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021)).  Plaintiffs cite *Cui* for its finding that 8 U.S.C. § 1229a(b)(5)(C)(i) provides a "statutorily allotted 180 days to challenge an in absentia [removal] order" and that the *in absentia* removal order "becomes final at the end of the 180-day period."  13 F.4th at 993, 996.  Because Plaintiffs were removed before the 180-day period had run, Plaintiffs contend that their removal was unlawful.  Dkt. No. 18 at 24–26.

Defendants dispute whether Plaintiffs have alleged an unlawful removal, citing a regulation that, contrary to *Cui*, provides that an *in absentia* order of removal is final upon entry.  *See* 8 C.F.R. § 1241.1(e).  Defendants also distinguish *Cui* because in that case, the noncitizen did not move to rescind and reopen within the 180-day period, but in this case, Plaintiffs did file such a motion and the immigration judge had denied it by the time they were removed.  Dkt. No. 15 at 13–14.  This argument overstates the outcome of Plaintiffs' first motion to rescind and reopen: it was not, as suggested by Defendants (*id*. at 13), denied on its merits.  Rather, it was rejected by the court clerk as improperly served, and Defendants conceded as much at oral argument.  Defendants do not dispute that Plaintiffs had 180 days in which to move to rescind and reopen the removal order, and that if such a motion had been filed, Defendants could not have removed Plaintiffs.  Defendants have not explained why the statute would provide Plaintiffs 180 days in which to file a motion that would prevent her removal, if Plaintiffs could in fact be removed at any time after the removal order was entered.  *See, e.g.*, *id*. at 13–14.

In any event, the Court need not, at this stage, determine whether Plaintiffs should prevail on their claim for wrongful removal.  The Court finds that Plaintiffs have pleaded facts that, if true, would suggest that their removal did not comply with all of the governing authority and was therefore unlawful.  Plaintiffs' claim for unlawful removal therefore withstands Defendants' motion to dismiss.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 15

### 3. Affirmative Government Misconduct

The complaint lists a claim for affirmative misconduct, based on the allegations that Defendants removed Plaintiffs after assuring B.P. that she would not be removed so soon, before the order of removal was final, without notice to counsel and while refusing to allow Plaintiffs to speak to their attorney. Dkt. No. 4 ¶¶ 20–21, 53–55. Plaintiffs also note that although the immigration court clerk immediately notified ICE electronically that the first motion to rescind had been rejected, the clerk *mailed* notice of that fact to Plaintiffs' counsel. *Id*. ¶ 23. Moreover, the clerk had provided counsel with a conformed copy of the motion to rescind, which led counsel to believe the filing had been accepted. *Id*. ¶ 21.

Defendants' motion to dismiss does not address affirmative misconduct as a separate claim, but argues more broadly that none of the misconduct alleged would render a removal order improper or unenforceable and thus does not support a claim for wrongful removal. *See* Dkt. No. 15 at 14. In their opposition, Plaintiffs separate the misconduct claim from the wrongful removal allegations, noting that the "government in immigration cases may be subject to equitable estoppel if it has engaged in affirmative misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005). Applying equitable estoppel allows a Court to ensure that "'no one shall be permitted to … take advantage of [its] own wrong[,]'" including the government. *Schwebel v. Crandall*, 967 F.3d 96, 106 (2d Cir. 2020) (quoting *Corniel-Rodriguez v. INS*, 532 F.2d 301, 302 (2d Cir. 1976)).

While Plaintiffs' allegations, if proved true, would support a finding of affirmative misconduct, it is unclear if or how equitable estoppel might apply to achieve the result Plaintiffs seek here, namely their return to the United States facilitated by the government, because Plaintiffs' complaint does not discuss estoppel. Still, the Court need not resolve, at this stage, whether Plaintiffs have requested the proper remedy for an affirmative misconduct claim. Because

Plaintiffs have alleged facts that would support a finding of affirmative misconduct, the Court will deny Defendants' motion to dismiss this claim.

4. INA and APA Violations

Plaintiffs' complaint alleges that Defendants violated the INA and the APA by removing Plaintiffs before their removal order was final.[9]  Dkt. No. 4 ¶¶ 37, 42–44, 46–51.

Defendants argue that Plaintiffs have cited no provision of the INA or the APA that requires them to facilitate Plaintiffs' return to the United States to participate in their removal proceedings, and that because Defendants retain discretion to refuse to parole a noncitizen, the Court cannot order Defendants to exercise their discretion in a particular way.  See Dkt. No. 15 at 10–13 (citing 8 U.S.C. § 1252(a)(2)(B)(ii) (indicating that the INA prevents courts from reviewing discretionary decisions, including decisions to parole or not parole noncitizens into the United States)).

That may be true, but this argument invites the Court to consider ultimate questions at a preliminary stage.  At this stage in the proceeding, the Court considers only whether Plaintiffs' claims can withstand a motion to dismiss, not how to resolve the claims on their merits.  The Court finds that Plaintiffs have adequately stated claims for violation of the INA and the APA because they have plausibly alleged that they were removed from the United States before the removal order became final, as a result of affirmative misconduct.  See Dkt. No. 4 ¶¶ 37, 42–44, 46–51. And although Defendants contend that the INA does not mandate Plaintiffs' return to the United States, and thus could not have been violated by Defendants' decision not to parole Plaintiffs, the Court need not find that Defendants' refusal to parole Plaintiffs violated the INA in order to deny Defendants' motion to dismiss.  Because Plaintiffs' complaint plausibly alleges that their removal did not comply with all applicable statutes and regulations, they have adequately stated a claim for

---

[9] Plaintiffs assert that their APA claim merges with their mandamus claims, and therefore these claims rise and fall together.  See Dkt. No. 18 at 18 n.3.

violation of the INA and APA, and the Court will save for another day whether such a claim can or should be remedied by a facilitated return to the United States.

5. Due Process

The complaint includes a claim for violation of the due process clause of the Fifth Amendment of the United States Constitution. Dkt. No. 4 ¶¶ 57–63. An immigration proceeding fails to provide the requisite process if "(1) the proceeding was so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting his case, and (2) the [noncitizen] demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (quoting *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). Plaintiffs allege that their due process rights were violated because their removal was fundamentally unfair and because their removal from the United States deprives them of the ability to meaningfully participate in their removal proceedings and prevents the full adjudication of her asylum application. Dkt. No. 4 ¶¶ 57–63.

Defendants contend that Plaintiffs have cited no authority indicating that due process requires their in-person participation in their removal proceedings. Dkt. No. 15 at 15–16. Even if that is true, it would not follow that Defendants' motion to dismiss should be granted, because the Court need not determine the proper remedy for Plaintiffs' claims at this stage. It is enough that the facts alleged in the complaint adequately state a due process claim: Plaintiffs have plausibly alleged that their removal was fundamentally unfair, deprives them of their ability to fully participate in their proceedings, and prevents their asylum application from being granted. The Court therefore finds that Plaintiffs' allegations address both elements of a due process claim in this context, and therefore denies Defendants' motion to dismiss this claim.

//

//

### III. CONCLUSION

For these reasons, the Court DENIES Defendants' motion. Dkt. No. 15. The parties are directed to file a joint status report and serve initial disclosures no later than July 3, 2024.

Dated this 12th day of June, 2024.

Kymberly K. Evanson
United States District Judge